IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION NO. 04-768 |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| DANNY HARRISON, a/k/a "Danny White" | : | CIVIL ACTION NO. 13-3320 |

## MEMORANDUM

**Padova, J.**                                                                                      **May 6, 2015**

Defendant Danny Harrison has filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (the "§ 2255 Motion"), asking that we vacate his conviction, following a jury trial, for witness tampering.   After holding an evidentiary hearing on April 15, 2015, we deny Harrison's Motion.

## I.      BACKGROUND

The Second Superseding Indictment in this case charged Harrison with two counts of distribution of 5 or more grams of cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1); two counts of possession with intent to distribute 50 grams or more of crack, in violation of 21 U.S.C. § 841(a)(1); two counts of possession with intent to distribute 50 grams or more of crack within 1000 feet of a school, in violation of 21 U.S.C. § 860(a); one count of possession of marijuana, in violation of 21 U.S.C. § 844(a); and one count of witness tampering, in violation of 18 U.S.C. § 1512(b)(1).

The charges arose out of a series of events that occurred after Jermaine Rippy, a confidential informant (a "CI") who was cooperating with Philadelphia police officers, completed two controlled buys of crack from Harrison.   Following the controlled buys, police executed a search warrant on Harrison's home, and seized 170 grams of cocaine, 88 grams of crack, 12 grams of marijuana, a digital scale, packets typically used to package drugs, and $100,000.00.   The

Government originally charged Harrison with just the drug crimes, but a grand jury subsequently returned the Second Superseding Indictment, which added the witness tampering charge, which was based on allegations that, after the drug charges were filed, Harrison threatened to kill Rippy and his family unless Rippy took responsibility for the drugs found in Harrison's home.

Harrison's jury trial commenced on June 18, 2007.   Rippy testified at trial regarding both the controlled drug buys and the charge of witness tampering.   With respect to witness tampering, Rippy testified that, on December 7, 2005, after Harrison had been charged with the drug crimes, Harrison came to Rippy's house with two associates, "Reggie" and "Dre," the latter of whom was armed.   (N.T. 6/21/07 at 47-48, 50.)   Harrison accused Rippy of being the Government's CI, and threatened that, if Rippy was the informant, Harrison would "kill [him] and [his] damn family." (Id. at 50.)   Harrison then ordered Rippy to get into Harrison's car, along with Reggie and Dre. (Id. at 51-52.)   In the car, Harrison offered Rippy money if Rippy would "help [Harrison] with his case."   (Id. at 53.)   Rippy agreed to "do anything," explaining at trial that he "didn't want [Harrison] to hurt [him] or [his] family."   (Id. at 54.)   Harrison asked Rippy to say that the drugs in Harrison's house belonged to Rippy, and Rippy agreed.   (Id. at 55.)   The next day, Harrison drove Rippy to the office of Harrison's then-lawyer, Dennis Cogan, Esq., and the three of them discussed Harrison's case.   (Id. at 57-60.)   Following that discussion, on February 15, 2006, Rippy signed a sworn, written statement, falsely taking responsibility for the drugs and money found in Harrison's house and stating that Harrison did not know that the drugs were in the house. (Id. at 73-82; Gov't Ex. 30.)   Cogan testified at trial that he subsequently provided this written statement to the Assistant United States Attorney and urged him to look into it.   (N.T. 6/27/07 at 185-88.)

At trial, Harrison took the position that Rippy's written statement was truthful, testifying that he had permitted Rippy to stay in his house and that the drugs, cash, and other items found in the house belonged to Rippy.   (N.T. 6/26/07 at 173, 176, 180-81.)   He maintained that Rippy reached out to him in late 2005, apologized for having left the drugs in Harrison's house, and asked what Harrison wanted him to do.   (Id. at 180-82.)   Harrison testified that he told Rippy that "the only thing [he] could think of" was that Rippy could "come tell [Cogan] the truth."   (Id. at 181.) Later, in closing arguments, Harrison's trial counsel argued that Rippy was a "gun-toting, robbing, thieving individual," who knows how to "play the system" and who was not credible when he testified that he only confessed to owning the drugs in Harrison's house because he was "in fear" of being killed.   (See, e.g., N.T. 6/28/07 at 69-70, 72.)

On June 29, 2007, the jury convicted Harrison of all eight counts of the Second Superseding Indictment.   We sentenced Harrison on December 29, 2007 to 156 months of incarceration, which included a thirty-six month consecutive sentence on the witness tampering charge.   Harrison appealed to the United States Court of Appeals for the Third Circuit, which affirmed his judgment and conviction on July 23, 2012.

On June 14, 2013, Harrison timely filed the instant § 2255 Motion.   He asserts three grounds for relief:   (1) that his trial counsel was ineffective for failing to request a jury instruction articulating an affirmative defense to the witness tampering charge; (2) that his appellate counsel was ineffective for failing to challenge the omission of the same affirmative defense from the jury instructions; and (3) that the Government engaged in prosecutorial misconduct by withholding Brady material concerning Rippy.   We initially appointed counsel to represent Harrison, but he

3

subsequently retained private counsel.   Private counsel conducted discovery regarding the alleged

Brady violation, and we held an evidentiary hearing on April 15, 2015.

## II.    LEGAL STANDARD

Harrison has moved for relief pursuant to 28 U.S.C. § 2255, which provides as follows:

> A prisoner in custody under sentence of a court established by Act
> of Congress claiming the right to be released upon the ground that
> the sentence was imposed in violation of the Constitution or laws of
> the United States, or that the court was without jurisdiction to
> impose such sentence, or that the sentence was in excess of the
> maximum authorized by law, or is otherwise subject to collateral
> attack, may move the court which imposed the sentence to vacate,
> set aside or correct the sentence.

28 U.S.C. § 2255(a).   "'Section 2255 does not provide habeas petitioners with a panacea for all

alleged trial or sentencing errors.'"   United States v. Perkins, Crim. A. No. 03-202, Civ. A. No.

07-3371, 2008 WL 399336, at *1 (E.D. Pa. Feb. 14, 2008) (quoting United States v. Rishell, Crim.

A. No. 97-294-1, Civ. A. No. 01-486, 2002 WL 4638, at *1 (E.D. Pa. Dec. 21, 2001)).   In order to

prevail on a § 2255 motion, the movant's claimed errors of law must be constitutional,

jurisdictional, "a fundamental defect which inherently results in a complete miscarriage of

justice," or "an omission inconsistent with the rudimentary demands of fair procedure."   Hill v.

United States, 368 U.S. 424, 428 (1962).

Two of Harrison's claims are based on alleged ineffective assistance of counsel.   In order

to prevail on a claim for ineffective assistance of counsel, a criminal defendant must demonstrate

both that (1) his attorney's performance was deficient, i.e., that the performance was unreasonable

under prevailing professional standards, and (2) that he was prejudiced by the attorney's

performance.   Strickland v. Washington, 466 U.S. 668, 687-88 (1984).   An attorney's

performance is deficient if it falls "below an objective standard of reasonableness."   Id. at 688.

Prejudice is proven if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> It "does not require certainty or even a preponderance of the evidence that the outcome would have been different with effective assistance of counsel; it requires only a reasonable probability" which is a "relatively low standard." <u>Boyd v. Waymart</u>, 579 F.3d 330, 354 (3d Cir. 2009) (quotation omitted). On the other hand, counsel cannot be found to be ineffective for failing to pursue a meritless claim. <u>See</u> <u>United States v. Sanders</u>, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." (citations omitted)); <u>see also</u> <u>Parrish v. Fulcomer</u>, 150 F.3d 326, 328 (3d Cir. 1998).

## III.    DISCUSSION

### A.    Trial Counsel's Ineffectiveness Concerning the Jury Charge

As noted above, Harrison claims that his trial counsel was ineffective for failing to request a jury instruction on the affirmative defense to witness tampering that is set forth in 18 U.S.C. § 1512(e). Section 1512(e) provides that it is an affirmative defense to witness tampering that the defendant's "conduct consisted solely of lawful conduct" and that his "sole intention was to encourage, induce, or cause the other person to testify truthfully." 18 U.S.C. § 1512(e). Harrison contends that this was his principal defense to the witness tampering charge at trial, and that his trial counsel was therefore deficient in failing to request that the jury be instructed on the defense. He further contends that the error was prejudicial because there is a reasonable probability that he would not have been convicted of witness tampering if the instruction had been given.

5

Consistent with federal law, we instructed the jury concerning witness tampering as follows:

> Section 1512(b)(1) of Title 18 provides in part that: "Whoever knowingly uses intimidation or physical force, threatens or corruptly persuades another person, or attempts to do so with the intent to influence, delay, or prevent the testimony of any person in an official proceeding, shall be guilty of an offense against the United States."
>
> . . . .
>
> Now, this statute is designed to protect persons who are victims of federal crimes, and persons who may be called to testify, or give evidence in federal proceedings, either civil or criminal, and persons who have information about federal crimes.   And it shouldn't surprise you that the integrity of the federal system of justice depends upon the cooperation of such victims, and potential witnesses.
>
> . . . .
>
> The essential elements of Count 8 that the Government must prove beyond a reasonable doubt are as follows:
>
> First: that this defendant acted knowingly.   Secondly, that this defendant corruptly persuaded or attempted to corruptly persuade another person.   In this case, Jermaine Rippy.   Thirdly, that this defendant acted with the intent to influence the testimony of Mr. Rippy in an official proceeding.
>
> Here the government charges that the defendant knowingly attempted to corruptly persuade Rippy with the intent to influence his testimony in a federal trial, this federal trial of the defendant.
>
> . . . .
>
> [W]e've used the term "corrupt persuasion, corruptly persuaded."   Well, **corrupt persuasion is corrupting another person by influencing him or her to violate his or her legal duty.**
>
> **The defendant must have more than an improper motive.   He must actually suggest that the other person violate**

**a legal duty[.]  [T]hus, persuading a witness to provide false information or testimony would be corrupt persuasion, as it would violat[e] the witness's legal duty to not lie to law enforcement and to testify truthfully.**  And success is not a prerequisite to conviction under the Witness Tampering Statute, an attempt is enough.

And the third element that the Government must prove beyond a reasonable doubt to prove this crime is that the defendant intended to influence the testimony of the other person in an official proceeding, and here the Government must prove beyond a reasonable doubt that the defendant acted with the intent to influence Jermaine Rippy's testimony in an official proceeding.

. . . [T]he phrase "with intent to influence testimony," means to act for the purpose of causing the person to change his or her testimony in any way or withhold testimony or information, permanently or even only for a period of time.    And the Government is not required to prove that the person to be corruptly persuaded actually changed or withheld his or her testimony, and nor is the Government required to prove that the defendant had direct contact with the person he intended to corruptly persuade. All that is required is that a defendant attempt to corruptly persuade that person with the requisite intent.

(N.T. 6/28/07 at 181-83 (emphasis added).)   Pursuant to these instructions, the jury was clearly instructed that it could not find Harrison guilty of witness tampering unless it found, beyond a reasonable doubt, that Harrison had influenced Rippy "to violate his . . . legal duty" -- in this case, his legal duty to testify truthfully.   (See id. at 183.)    Indeed, the Government's theory at trial was that Harrison engaged in witness tampering by threatening to harm Rippy and his family unless Rippy swore in a written statement that the drugs and money found in Harrison's house belonged to him when, in fact, they did not.   (See, e.g., N.T. 6/18/07 at 23-25, 27; N.T. 6/28/07 at 140-142.)

As noted above, Harrison argues in his § 2255 Motion that his trial counsel was ineffective for failing to request an additional jury instruction on an affirmative defense that would have placed the burden on Harrison to prove, by a preponderance of the evidence, that he had

merely encouraged Rippy to prepare and provide a truthful written statement.  We reject this ineffectiveness claim both because Harrison has not established that counsel's failure to request the jury charge constituted deficient representation and also because he has not established that he was prejudiced by the lack of such an instruction.

Under the circumstances presented, it was not unreasonable for trial counsel to pursue a strategy that required the Government to prove beyond a reasonable doubt that Harrison had corruptly persuaded Rippy to prepare a false sworn statement, rather than pursuing a strategy that would have shifted the burden onto Harrison to prove the converse by a preponderance of the evidence, i.e., that he had encouraged Rippy to testify truthfully.   In fact, we would question the professional reasonableness of the latter strategy under the circumstances of this case, because it would arguably relieve the Government of its burden of proving an element of the charged offense. Cf. United States v. Johnson, 968 F.2d 208, 214 (2d Cir. 1992) (stating that defendant to witness tampering charge who requested instruction on affirmative defense "might have been better off not requesting a charge on the affirmative defense, and arguing to the jury that the government had not met its burden of proving the conduct element of the offense beyond a reasonable doubt"); id. (noting that other courts have struggled with the constitutionality of the affirmative defense in § 1512, and that a commentator has argued that "absent narrowing judicial interpretation[,] . . . shifting the burden of persuasion to the defendant on certain issues . . . will not withstand attack under the due process clause." (quotations and citations omitted)).

For related reasons, we also find that Harrison has not established that he suffered prejudice as a result of his trial counsel's failure to request a jury instruction on § 1512(e).  As noted above, based on the instructions that we gave to the jury, the jury's guilty verdict on the

witness tampering charge was necessarily grounded on a factual finding beyond a reasonable doubt that Harrison had influenced Rippy to violate his legal duty to be truthful in his sworn, written statement.   Thus, the jury necessarily rejected Harrison's testimony that he had merely encouraged Rippy to tell the truth.   (See N.T. 6/26/07 at 180-81).   There is therefore no reasonable probability that the verdict on the witness tampering charge would have been different had Harrison been required to carry the burden of proving that he had only persuaded Rippy to prepare a truthful statement, not to lie.

For the foregoing reasons, we reject Harrison's claim that his trial counsel was ineffective for failing to request a charge on the affirmative defense, because he has not demonstrated either that counsel's strategy fell below a standard of professional reasonableness or that there was a reasonable probability that, absent the alleged error, the jury would have had reasonable doubt as to his guilt on the witness tampering charge.   We therefore deny Harrison's § 2255 Motion insofar as it asserts this ground for relief.

**B.    Appellate Counsel's Ineffectiveness**

Harrison also argues that appellate counsel was ineffective for failing to argue on appeal that it was plain error to omit the § 1512(e) affirmative defense from the jury instructions at trial. To prevail on this claim, Harrison must establish that "there is a reasonable probability that the result of the appeal would have been different had counsel's stewardship not fallen below the required standard."   United States v. Mannino, 212 F.3d 835, 845 (3d Cir. 2000).   For the result of the appeal to have been different, the United States Court of Appeals for the Third Circuit would have had to grant Harrison relief on his claim of plain error.   As a general matter, an appellate court has the discretion to correct plain error only if the error affects "substantial rights" and

"'seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings.'" United States v. Morena, 547 F.3d 191, 192 n.1 (3d Cir. 2008) (quoting United States v. Olano, 507 U.S. 725, 732 (1993)); see also United States. v. Goodson, 544 F.3d 529, 539 (3d Cir. 2008) (citations omitted).   The appellate court will find that an error "'affected substantial rights'" only if it "was prejudicial to the defendant and . . . affected the outcome of the district court proceeding."   United States. v. Warren, 338 F.3d 258, 259 n.1 (3d Cir. 2003) (quoting Olano, 507 U.S. at 732).

Here, we have already concluded that Harrison has failed to establish that there is a reasonable probability that the omission of a jury charge on the affirmative defense in § 1512(e) affected the outcome of the district court proceeding.   Accordingly, we conclude that he has also failed to establish that there is a reasonable probability that the appellate court would have found that the omission of the jury charge affected his "substantial rights."   See id.   We therefore deny Harrison's § 2255 Motion insofar as it contends that his appellate counsel was ineffective for failing to argue that the omission of the charge constituted plain error.

### C.   **Brady** Violation

In his third claim, Harrison argues that we should grant him a new trial on the witness tampering charge because the Government violated its obligations under Brady v. Maryland, 373 U.S. 83 (1963), and deprived him of his constitutional right to due process by withholding information that Rippy was under investigation for insurance fraud before and/or during trial.

In Brady, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment."   Id. at 87.   "[T]o establish a Brady violation requiring relief, a defendant

must show that (1) the government withheld evidence, either willfully or inadvertently; (2) the evidence was favorable, either because it was exculpatory or of impeachment value; and (3) the withheld evidence was material.   Lambert v. Blackwell, 387 F.3d 210, 252 (3d Cir. 2004) (citations omitted).   Information is material "'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Johnson v. Folino, 705 F.3d 117, 128 (3d Cir. 2013) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).   "'A reasonable probability of a different result is . . . shown when the government's evidentiary suppression undermines confidence in the outcome of the trial.'" United States v. Walker, 657 F.3d 160, 185 (3d Cir. 2011) (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)).

At our evidentiary hearing on April 15, 2015, which was focused on Harrison's Brady claim, we heard the testimony of Special Agent Bryan Pacchioli from the Federal Bureau of Investigation (the "FBI").   Agent Pacchioli testified that, on February 14, 2006, he initiated an investigation into an insurance fraud scheme involving false auto insurance claims.   (N.T. 4/15/15 at 4; see also id. at 15, 18.)   In connection with that investigation, Agent Pacchioli conducted a "couple hundred" interviews.   (Id. at 7.)   The first time that Rippy, a/k/a Jermaine Blassengale, was mentioned in an interview was on April 23, 2007, when Rippy's brother, Jerry Blassengale, stated that he purchased a used Mercedes and gave it "[his] brother" as a wedding gift in January 2006.   (Id. at 13; Ex. D-1 at 2.)   Agent Pacchioli testified that this interview did not cause him to expand his investigation to include Rippy because it did not suggest Rippy's involvement in any criminal activity.   (N.T. 4/15/15 at 14.)   The second time that Rippy was mentioned in an interview -- and the first time that he was mentioned by name -- was on May 23, 2007, when a

11

woman named Valerie Alexander stated that Rippy referred her son to Jerry Blassengale after his Kia Sorrento was vandalized, and that Jerry Blassengale, in turn, referred her son to an auto body shop that was ultimately tied to the insurance fraud scheme.   (Id. at 13, 23; Ex. D-2 at 1.)   This information, like that from Jerry Blassengale's interview, did not lead Agent Pacchioli to believe that Rippy was involved in any insurance fraud scheme.   (N.T. 4/15/15 at 14.)

Less than two weeks later, on June 4, 2007, Jerry Blassengale was arrested on charges of insurance fraud.   (See Ex. D-4.)   A June 7, 2007 FBI memorandum lists the items seized from Jerry Blassengale's car at the time of his arrest, and that list includes Rippy's birth certificate and driver's license.   (Id.; see also N.T. 4/15/15 at 25-26.)   Finally, on September 24, 2007, which was after Harrison's trial in this case, Agent Pacchioli interviewed Tamir Salahuddin, who recounted that Rippy and Jerry Blassengale had intentionally damaged his van so that he could file an insurance claim, based on a fictitious car accident.[1]   (N.T. 4/15/15 at 5-6; Gov't Ex. 1.) According to Agent Pacchioli, this was the first time that he suspected Rippy of being part of the fraud scheme.   (N.T. 4/15/15 at 4-5.)   Thereafter, grand jury testimony provided further evidence that Rippy was involved in the scheme.   (See id. at 7-8.)

On February 18, 2010, the Government charged numerous defendants, including Rippy, in a federal Indictment.   (Gov't Ex. 3.)   Rippy was charged with one count of mail and wire fraud based on allegations that he was part of a scheme to file a fraudulent insurance claim for an accident that occurred on August 9, 2005.   (Id.; N.T. 4/15/15 at 9.)   The Government subsequently determined, however, that Rippy was incarcerated at the time of the alleged criminal

---

[1]   Agent Pacchioli testified that, prior to the Salahuddin interview, on September 4, 2007, Rippy was mentioned in an interview with a woman named of Monica McKnight, but there is no further evidence in the record regarding this interview.   (N.T. 4/15/15 at 13-14.)

activity and, as a result, it dismissed the charge against him on October 21, 2010.   (Gov't Exs. 3-4; N.T. 4/15/15 at 10-12.)

Harrison now argues that the Government violated <u>Brady</u> by failing to produce the report of the April 23, 3007 Jerry Blassengale interview (Ex. D-1), the report of the May 23, 2007 Valerie Alexander interview (Ex. D-2), and the inventory of items that federal agents seized from Jerry Blassengale's car on June 7, 2007 (Ex. D-4), all of which the Government had before Harrison's trial.   (<u>See</u> N.T. 4/15/15 at 32-33.)   Notably, these documents had no exculpatory or impeachment value in their own right, and Harrison does not argue that they did.   Instead, Harrison argues that, if those documents had been provided to his trial counsel, counsel would have further investigated Rippy's involvement in the insurance fraud scheme, uncovered proof of Rippy's involvement in that scheme, and used that proof to impeach Rippy at trial.   (<u>Id.</u> at 33-35); <u>see also</u> <u>Maynard v. Virgin Islands</u>, 392 F. App'x. 105, 115 (3d Cir. 2010) ("[A] successful <u>Brady</u> challenge requires the defendant to show that the suppressed evidence is either itself admissible or would have directly led to evidence that would be admissible at a new trial or sentencing." (citations omitted)).

Harrison has not, however, specifically identified any evidence that he would have discovered as a result of such disclosures.   Furthermore, while he contends that he would have uncovered evidence that Rippy was involved in insurance fraud, he has not explained how any such evidence would have been admissible at trial or would have created a reasonable probability that the result of his trial would have been different.   Federal Rule of Evidence 609 provides only for impeachment by evidence of a criminal conviction, not by evidence of uncharged criminal conduct.   Fed. R. Evid. 609(a).   As such, Rippy's uncharged fraud activity would not have been

13

admissible for impeachment purposes.   See, e.g., United States v. Camacho, Crim. A. No. 10-170, 2010 WL 5069866, at *2 (E.D. Pa. Dec. 6, 2010) (holding that defendant could not attempt to impeach CI with evidence of arrest that did not result in conviction).   We further note that any cross-examination regarding uncharged fraud activity, even if allowed, would have added no meaningful impeachment value to Harrison's trial counsel's cross-examination regarding Rippy's considerable record of criminal convictions, which included convictions for theft, robbery, carrying a firearm without a license, and assault.   (See N.T. 6/21/07 at 105-116.)   Thus, there is simply not a reasonably probability that any evidence of fraud activity that Harrison could have uncovered would have changed the outcome of Harrison's trial.   See Rivera v. Pennsylvania, 187 F. App'x 240, 247 (3d Cir. 2006) ("'The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense.'" (quoting United States v. Agurs, 427 U.S. 97, 109-110 (1976))).

Under these circumstances, we conclude that Harrison has failed to establish that the Government withheld any evidence that was either favorable to him or material.   We therefore deny Harrison's § 2255 motion insofar as it seeks a new trial based on the Government's alleged Brady violation.

**IV.** **CONCLUSION**

For the foregoing reasons, we deny Harrison's § 2255 Motion in its entirety.   An
appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.